UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HAPPINESS GARRIOTT**,

                  Case No.

        Plaintiff,

v.                      Hon.

**MARTIN LUTHER KING, JR.**
**EDUCATION CENTER ACADEMY,**

        Defendant.

_____/

**MILLER COHEN, P.L.C.**
Keith D. Flynn (P74192)
*Attorney for Plaintiff*
7700 2nd Ave. Ste. 335
Detroit, MI  48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com


_____/

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

        There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

        */s/Keith D. Flynn*_____
        Keith D. Flynn

        **NOW COMES** Plaintiff, **HAPPINESS GARRIOTT**, by her attorneys,

**MILLER COHEN P.L.C.**, and for her Complaint against Defendant, **MARTIN**

**LUTHER KING, JR. EDUCATION CENTER ACADEMY**, states the following:

## INTRODUCTION

Plaintiff, Happiness Garriott, brings this suit seeking remedy against her former employer, Defendant Martin Luther King, Jr. Education Center Academy, for discriminating against her based on her African ethnicity and her disability she suffered after she slipped and fell on an icy sidewalk at work.   Furthermore, Defendant retaliated against her for filing a workers' compensation claim, requesting that her employer compensate her for her medical expenses, and demanding that the employer respect her work restrictions.

## PARTIES

1.     Plaintiff Happiness Garriott is an individual who resides in Detroit, Michigan.

2.     Defendant Martin Luther King, Jr. Education Center Academy is a non-profit doing business and headquartered in Detroit, Michigan.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction over Plaintiff's claims arising under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, pursuant to 28 U.S.C. § 1331.

4.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

6.      Plaintiff Happiness Garriott is of African ethnicity having been born and raised in Cameroon, but moved to the United States in 1990 where she became a citizen.

7.      Defendant Martin Luther King Jr. Education Center Academy is a public school academy for students in K-8th grade.

8.      Ms. Garriott began working for Defendant in September 2018 as a Family Support Coordinator.

9.      Family Support Coordinators are responsible for assisting families to understand what resources are available to support them, including resolving disputes between the families and teachers.

10.     The position is not a teaching position and at no time during Ms. Garriott's employment did Defendant indicate that the position of Family Support Coordinator required any licensure or certification.

11.     On or about February 1, 2019, Ms. Garriott slipped and fell on ice on the sidewalk at work.

12.     She landed on her left knee and suffered pain in both her knee and her lower back.

13.     She was diagnosed with a patella fracture and suffered acute right-sided low back pain with right-sided sciatica.

14.     Initially, Ms. Garriott was taken off work by her physician and returned on February 25, 2019, but was restricted to seated work only with no prolonged standing, walking, climbing (stairs/ladders), squatting, or kneeling.

15.     Still to this day, Ms. Garriott has restrictions requiring that she receive a break after sitting for two hours or more.

16.     Her condition substantially impairs her ability to sleep with her tossing and turning all night.

17.     On average, she only gets four hours of sleep, three days a week, and two to three hours the remainder.

18.     Even with her knee brace, she is still in pain.

19.     The knee brace provides greater stability without which she could not walk for long distances or extended periods.

20.     Ms. Garriott's condition may last her entire lifetime.

21.     Ms. Garriott delivered a copy of her restrictions to the employer's Administrative Director, Ms. Constance Price, on or about February 25, 2019 and requested to meet to discuss appropriate accommodations.

22.     Namely, she requested to perform her duties sitting down. She never received a response.

23.     Instead of respecting Ms. Garriott's light-duty restrictions, Ms. Garriott was placed in the Fifth-Grade classroom standing for five hours to substitute teach.

4

24.     Ordinarily, substitute teachers were scheduled in advance from outside the employer.

25.     On this occasion, no request had been made by Defendant to schedule a substitute teacher to Ms. Garriott's knowledge.

26.     Substitute teaching was not part of her job duties.

27.     Prior to her injury, Ms. Garriott could meet with children in her office and was not required to travel across campus.

28.     After her injury, Ms. Garriott was told by Ms. Price that she had to split her time between two buildings on campus despite her restrictions.

29.     As a result, she was forced to walk back and forth between two buildings every day, even though the meetings could have been scheduled for her office.

30.     In March 2019, Ms. Garriott requested that the employer open a workers' compensation claim to cover her physical therapy expenses.

31.     The employer failed to respond to Ms. Garriott's request.

32.     As a result, Ms. Garriott was forced to file a workers' compensation claim toward the end of March, in order to have her medical expenses covered.

33.     Only then did Ms. Price agree to pay Ms. Garriott's co-pays related to the injuries she sustained on the job.

34.     While Ms. Garriott had noticed that Ms. Price had treated her differently in the past ridiculing her African accent, Ms. Price's behavior became worse after the injury and request for medical expenses and a reasonable accommodation.

35.     After that, Ms. Price began to micromanage Ms. Garriott often directly corresponding with parents asking them about her performance.

36.     Ms. Price would often denigrate Ms. Garriott and attack her credibility in front of parents and members of the staff questioning whether she had any authority whatsoever.

37.     The comments regarding Ms. Garriott's accent became worse.

38.     Ms. Price would constantly say that she could not understand anything Ms. Garriott was saying.

39.     Ms. Price would act like Ms. Garriott was stupid and would promote the same ideas provided by Ms. Garriott, but only when non-African co-workers, i.e., Caucasians and African Americans, would make the proposal.

40.     In March, Ms. Garriott complained to the Dean about Ms. Price's behavior and told him that she believed that she was being discriminated against because of her country of origin.

41.     The Dean indicated that he was not sure why Ms. Price was treating Ms. Garriott so poorly or why Ms. Garriott was not being paid for her work-related

medical expenses, but Ms. Garriott is unaware of any steps being taken to correct her underlying concerns.

42.     Between April and May, Ms. Garriott complained about Ms. Price's behavior and the discrimination to Ms. Price.

43.     Ms. Price told her that she should just be grateful to have been allowed to live in America and that her country of origin is so poor that most Africans do not even have running water.

44.     Ms. Price continued to complain about how immigrants come to America and all they have are complaints about their rights.

45.     Ms. Garriott responded that she did not understand what her country of origin had to do with her rights.

46.     Ms. Price remained silent.

47.     In May, Plaintiff was informed by the Dean that Ms. Price had asked him about whether Ms. Garriott was planning to sue for discrimination.

48.     After that, Ms. Price seemed to be purposely avoiding Ms. Garriott.

49.     On or about June 7th was the last day of the school year.

50.     After the school year ended in June, Ms. Garriott received a bill from her health insurance for a $4,000 deductible relating to her physical therapy.

51.     In August, Ms. Garriott requested that the employer pay the deductible.

52.     Ms. Price asked that Ms. Garriott bring the bill to her, which she did. Ms. Price indicated that she would take a look at it.

53.     Ms. Garriott never heard back about the bill.

54.     Finally, Ms. Garriott reported to orientation on or about August 28, 2019 for the next school year.

55.     When she arrived, Ms. Price told her that she would give her a call the next day.

56.     She never did.

57.     Instead, on or about September 2nd—the evening before the first official school day—Ms. Price left Ms. Garriott a voicemail message informing her that she was terminated.

## COUNT I

## <u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)</u>

58.     Plaintiff incorporates by reference all preceding paragraphs.

59.     Plaintiff's condition is a "disability" within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.  "Disability" is defined as a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment.

8

60.    Plaintiff suffers from sciatica, which is a physical impairment that substantially limits one or more major life activities.  Plaintiff was also "regarded as" disabled by Defendants. a patella fracture and suffered acute right-sided low back pain with right-sided sciatic.

61.    Plaintiff was able to perform the essential job functions of her prior position with reasonable accommodations.

62.    Defendant intentionally discriminated against Plaintiff in violation of the ADA by discharging her directly because of her disability and without engaging in the interactive process to determine a reasonable accommodation.

63.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from disability discrimination.

64.    Ms. Garriott was ultimately discharged due to her disability.

65.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.      Declare that Defendant's practices and actions constitute unlawful employment practices in violation of the ADA;

B.      Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.      Award Plaintiff compensatory damages and punitive damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT II

### VIOLATION OF THE ADA - RETALIATION FOR ASSERTING RIGHTS PROTECTED UNDER THE ADA

66.     Plaintiff incorporates by reference all preceding paragraphs.

67.     As stated in Count I, Plaintiff is a disabled person within the meaning of the ADA or regarded as disabled.

10

68.     Plaintiff made a request for a reasonable accommodation and complained about her supervisor's handling of her reasonable accommodation.

69.     Plaintiff opposed disability discrimination in the workplace perpetrated by her manager.

70.     In violation of the ADA, Defendant retaliated against Plaintiff because of her complaints about her supervisor's discriminatory behavior and refusal to accept her reasonable accommodation request, by discharging her.

71.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.     Declare that Defendant's practices and actions constitute unlawful employment practices in violation of the ADA;

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and

suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.      Award Plaintiff compensatory damages and punitive damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT III

### VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (PWDCRA)

72.      Plaintiff incorporates by reference all preceding paragraphs.

73.      Plaintiff's condition is a "disability" within the meaning of Michigan's Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1101 *et seq*. "Disability" is defined as (1) a determinable physical or mental characteristic resulting from disease, injury, congenital condition of birth, or functional disorder that substantially limits one or more of an individual's major life activities, and is unrelated either to an individual's ability to perform the duties of a particular job or to the individual's qualifications for employment or promotion; (2) a history of such a characteristic;

or (3) being regarded as having such a characteristic. MCL §§ 37.1103(d).

74.     Plaintiff suffers from sciatica, which is a physical impairment that substantially limits one or more major life activities.  Plaintiff was also "regarded as" disabled by Defendants. a patella fracture and suffered acute right-sided low back pain with right-sided sciatic.

75.     Plaintiff was able to perform the essential job functions of her prior position with reasonable accommodations.

76.     Defendant intentionally discriminated against Plaintiff in violation of the PWDCRA by discharging her because of her disability and without engaging in the interactive process to determine a reasonable accommodation.

77.     Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from disability discrimination.

78.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.      Declare that Defendant's practices and actions constitute unlawful employment practices in violation of the PWDCRA;

B.      Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.      Award Plaintiff compensatory damages and exemplary damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT IV

## VIOLATION OF THE PWDCRA - RETALIATION FOR ASSERTING RIGHTS PROTECTED UNDER THE PWDCRA

79.      Plaintiff incorporates by reference all preceding paragraphs.

80.     As stated in Count III, Plaintiff is a disabled person within the meaning of the PWDCRA.

81.     Plaintiff made a request for a reasonable accommodation and complained about her supervisor's handling of her reasonable accommodation.

82.     Plaintiff opposed disability discrimination in the workplace perpetrated by her manager.

83.     In violation of the PWDCRA, Defendants retaliated against Plaintiff because of her complaints about her supervisor's discriminatory conduct and refusal to accept her reasonable accommodation request by discharging her.

84.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.      Declare that Defendant's practices and actions constitute unlawful employment practices in violation of the PWDCRA;

B.      Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.      Award Plaintiff compensatory damages and exemplary damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT V

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – ETHNICITY DISCRIMINATION

85.      Plaintiff incorporates by reference all preceding paragraphs.

86.      Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(f).

87.      Plaintiff is of African ethnicity.

88.      Defendant is an employer as defined by Title VII, 42 U.S.C. § 2000e(b). It has more than 15 employees and is engaged in an industry effecting commerce.

89.     In violation of Title VII, 42 U.S.C. § 2000e-2(a), Defendant discriminated against Plaintiff on the basis of ethnicity, by harassing her on a regular basis, refusing to take remedial action to address Plaintiff's complaint of ethnicity discrimination, denying her an accommodation that was provided to a similarly situated Caucasian employees and by discharging her.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.     Declare that Defendant's practices and actions constitute unlawful employment discrimination and harassment in violation of Title VII of the Civil Rights Act;

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.     Award Plaintiff compensatory damages and punitive damages;

D.     Award Plaintiff equitable relief as this Court deems just and appropriate;

E.     Award Plaintiff reasonable attorney fees, costs, and interest; and

F.     Award such other relief as this Court deems just and proper.

## COUNT VI

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION

90.     Plaintiff incorporates by reference all preceding paragraphs.

91.     As stated in Count V, Plaintiff was an employee of Defendant, and Defendant is an employer as defined by Title VII.

92.     Plaintiff complained about discrimination and harassment on the basis of her ethnicity, while she was employed by Defendant.

93.     Defendant had knowledge of Plaintiff's opposition to ethnicity discrimination and harassment prior to Plaintiff's termination.

94.     In violation of Title VII, 42 U.S.C. § 2000e-3(a), Defendant retaliated against Plaintiff for her protected activity by terminating her employment.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.     Declare that Defendant's practices and actions constitute unlawful retaliation in violation of Title VII of the Civil Rights Act;

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.     Award Plaintiff compensatory damages and punitive damages;

D.     Award Plaintiff equitable relief as this Court deems just and appropriate;

E.     Award Plaintiff reasonable attorney fees, costs, and interest; and

F.     Award such other relief as this Court deems just and proper.

18

## COUNT VII
## MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT – ETHNICITY DISCRIMINATION

95.     Plaintiff incorporates by reference all preceding paragraphs.

96.     Plaintiff was an employee of Defendant as defined by Michigan's Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), MCL § 37.2201(a).

97.     Plaintiff is of African ethnicity.

98.     In violation of Elliott-Larsen, MCL § 37.2202, Defendant discriminated against Plaintiff on the basis of her ethnicity, by harassing her on a regular basis, refusing to take remedial action to address Plaintiff's complaint of ethnicity discrimination, denying her an accommodation that was provided to a similarly situated Caucasian employees and by discharging her.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.     Declare that Defendant's practices and actions constitute unlawful employment discrimination and harassment in violation of the Elliott-Larsen Civil Rights Act;

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.     Award Plaintiff compensatory damages and exemplary damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT VIII

## MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION

99.      Plaintiff incorporates by reference all preceding paragraphs.

100.      As stated in Count V, Plaintiff was an employee of Defendant, and Defendant is an employer as defined by Elliott-Larsen.

101.      Plaintiff complained about discrimination and harassment on the basis of her ethnicity while she was employed by Defendant.

102.      Defendant had knowledge of Plaintiff's opposition to ethnicity discrimination and harassment prior to Plaintiff's termination.

103.      In violation of Elliott-Larsen, M.C.L. § 37.2701, Defendant retaliated against Plaintiff for her protected activity by terminating her employment.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.      Declare that Defendant's practices and actions constitute unlawful retaliation in violation of the Elliott-Larsen Civil Rights Act;

20

B.      Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.      Award Plaintiff compensatory damages and exemplary damages;

D.      Award Plaintiff equitable relief as this Court deems just and appropriate;

E.      Award Plaintiff reasonable attorney fees, costs, and interest; and

F.      Award such other relief as this Court deems just and proper.

## COUNT IX

## RETALIATORY DISCHARGE UNDER THE MICHIGAN WORKER'S DISABILITY COMPENSATION ACT

104.   Plaintiff incorporates by reference all preceding paragraphs.

105.   Plaintiff filed a worker's compensation claim and sought reimbursement for medical expenses related to an injury that occurred during the course of employment.

106.   Plaintiff also requested an accommodation from the Defendant in the form of respecting her work restrictions.

107.   The Michigan Worker's Disability Compensation Act (WDCA) states that:

A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a

complaint or instituted or caused to be instituted a proceeding under
this act or because of the exercise by the employee on behalf of
himself or herself or others of a right afforded by this act.

MCL § 418.301(13).

108.   Defendant treated similarly situated employees differently who did not
file worker's compensation claims.

109.   Consequently, Defendant has retaliated against Plaintiff for seeking
compensation for injuries incurred while on the job by denying Plaintiff's request
for reasonable accommodations and ultimately terminating her employment.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant the
following remedies:

A.     Declare that Defendant's practices and actions constitute unlawful
employment practices in violation of the WDCA;

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future,
emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and
suffering, loss of job opportunity, and loss of earning capacity to which she is
entitled;

C.     Award Plaintiff compensatory damages and exemplary damages;

D. Award Plaintiff equitable relief as this Court deems just and appropriate;

E. Award Plaintiff reasonable attorney fees, costs and interest; and

F. Award such other relief as this Court deems just and proper.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Honorable Court enter an order granting her:

A.      All available damages for lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

B.      Additional punitive and exemplary damages provided under the law;

C.      All necessary injunctive relief, including front pay;

D.      Reasonable attorney's fees and costs incurred in this litigation; and

E.      All such further relief as shall meet equity and good conscience.

Respectfully submitted,

MILLER COHEN, P.L.C.

By:*/s/Keith D. Flynn*
Keith D. Flynn (P74192)
*Attorney for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com

Dated: January 25, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HAPPINESS GARRIOTT**,

                                        Case No.

              Plaintiff,

v.                                     Hon.

**MARTING LUTHER KING, JR.
EDUCATION CENTER ACADEMY,**

              Defendant.

_____/

**MILLER COHEN, P.L.C.**
Keith D. Flynn (P74192)
*Attorney for Plaintiff*
7700 2nd Ave. Ste. 335
Detroit, MI  48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com


_____/


### DEMAND FOR TRIAL BY JURY

       **NOW COMES** Plaintiff, **HAPPINESS GARRIOTT**, by her attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands for a trial by jury, for all issues so

triable.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:*/s/Keith D. Flynn*
Keith D. Flynn (P74192)
*Attorney for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com

Dated: January 25, 2021

2